**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TERRY A. BARNES,** | : | |
| 1826 Dearth Rd., | : | |
| Kingston, OH 45644 | : | Case No.: 2:21-cv-770 |
| | : | |
| Plaintiff, | : | JUDGE |
| | : | |
| vs. | : | MAGISTRATE JUDGE |
| | : | |
| **BROWN & ROOT INDUSTRIAL** | : | |
| **SERVICES, LLC,** | : | |
| c/o Registered Agent: | : | **Jury Demand Endorsed Hereon** |
| CT Corporation System | : | |
| 4400 Easton Commons Way, Suite 125 | : | |
| Columbus, OH 43219 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**

NOW COMES Plaintiff Terry A. Barnes ("Plaintiff") and proffers this Complaint for damages against Defendant Brown & Root Industrial Services, LLC ("Defendant").

**JURISDICTION AND VENUE**

1. This action is brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112").

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provide for original jurisdiction of Plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

3. This Court also has jurisdiction over Plaintiff's claims under the statutory laws of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

1

4. Venue is proper pursuant to 28 U.S.C. § 1391, because Plaintiff performed his job duties for Defendant in the Eastern Division of the Southern District of Ohio, and Defendant is doing and has done substantial business in the Southern District of Ohio.

## THE PARTIES

5. Plaintiff Terry A. Barnes is an individual, a United States Citizen, and a resident of Ross County.

6. Defendant Brown & Root Industrial Services, LLC is a foreign Limited Liability Company registered to do business in Ohio and conducting business in the Southern District of Ohio.

7. At all times relevant herein, Plaintiff was an "employee" of Defendant as that term is defined by the ADA and Ohio law.

8. At all times relevant herein, Defendant was an "employer" as that term is defined by the ADA and Ohio law.

## FACTUAL BACKGROUND

9. Plaintiff is an individual with a disability as defined under the ADA and Ohio law. Plaintiff suffers from Dyslexia and Attention Deficit Hyperactivity Disorder.

10. Plaintiff utilizes the services of a vocational rehabilitation counselor employed by Opportunities with Ohioans with Disabilities, who assists individuals with disabilities in navigating the workplace and overcoming barriers caused by their disabilities.

11. Plaintiff's disabilities make it difficult for him to read, spell, and write.

12. Plaintiff is an electrician.

13. Plaintiff first became employed by Defendant in or around Summer 2019. Plaintiff was employed with Defendant for approximately three (3) months before he resigned to take another position.

14. During this three-month period of employment with Defendant, Plaintiff was assigned to a project at Dupont, located at 800 Dupont Road in Circleville, Ohio in the role of Maintenance Electrician.

15. Plaintiff requested an accommodation due to his disability and was granted a reasonable accommodation. At all times during his first three months of employment on the Dupont project, Plaintiff successfully performed his job duties with his accommodation.

16. On or around October 5, 2020, Plaintiff was rehired by Defendant.

17. Plaintiff was again placed on a project at Dupont in the role of Maintenance Electrician to perform electrician work.

18. Plaintiff was assigned to a different Superintendent, Zack Dunham, for this project.

19. Plaintiff disclosed his disability to Mr. Dunham and requested an accommodation.

20. Specifically, Plaintiff requested assistance completing the "Total Safety Task Instruction" paperwork. This paperwork was required to be completed before beginning each job.

21. Electricians were typically assigned 1-2 jobs per shift.

22. Plaintiff's disability made it difficult for him to complete the paperwork without assistance.

23. Mr. Dunham refused to consider Plaintiff's accommodation request and informed Plaintiff that if he could not do the job, then he could not work for there.

24. Plaintiff provided his vocational rehabilitation counselor's (Kayla Knable) contact information and requested that Mr. Dunham contact her.

25. When Ms. Knable did not hear from Mr. Dunham, Ms. Knable contacted Defendant's HR Director, Katie Richardson.

26. Ms. Knable informed Ms. Richardson of Plaintiff's disability and proposed the following accommodations on or around October 22, 2020: 1) permit Plaintiff to use a laptop or tablet with a "Speech to Text" feature to help him complete the paperwork; 2) permit Plaintiff to use a tape recorder while on the job site, then complete his paperwork using his cell phone later in an office setting; 3) permit Plaintiff to have the paperwork portion of his job waived or given to another individual to transcribe; or 4) permit a rehabilitation technology specialist to visit the work site and give their professional recommendation as to appropriate accommodations.

27. After some discussion, on or around November 4, 2020, Ms. Richardson stated that Defendant could accommodate Plaintiff by allowing him to have the paperwork portion of his job waived or given to another individual to transcribe.

28. Despite the approval from Defendant's HR department, Mr. Dunham refused to honor Plaintiff's accommodation.

29. Rather than allowing him to perform the duties of his electrician job with his accommodation, Plaintiff was required to work in the role of assistant to electricians on site.

30. Throughout the remainder of his employment, Plaintiff was required to perform the tasks of an assistant, which did not include electrician work.

31. Rather, Plaintiff was required to perform errands, set up materials and equipment, bust concrete, remove pipe insulation, etc.

32. This resulted in Plaintiff's coworkers becoming frustrated with him, as they believed they were required to perform more work due to Plaintiff's disability.

33. For example, a coworker, Jim Lewis, persistently harassed Plaintiff on the basis of his disability. Mr. Lewis referred to Plaintiff almost daily as an "idiot," "retard," and "dumbass."

34. Further, Plaintiff was the only electrician who was not given a uniform. When Plaintiff inquired as to when he could expect to receive his, the shop supervisor informed Plaintiff that his supervisor instructed him not to order Plaintiff a uniform because Plaintiff probably would not be with the company for long.

35. Plaintiff complained to his supervisor, Terry Johnson, that his accommodation was not being honored, and that he was being subject to harassing comments and mistreatment by his coworkers.

36. Mr. Johnson instructed Plaintiff to ignore it and refused to take any action to rectify the situation.

37. On or around January 12, 2021, Plaintiff was eating lunch in the breakroom. A coworker entered the breakroom and began yelling at Plaintiff for having to cover his job duties.

38. Plaintiff became frustrated, stood up, and threw his disposable lunch bag at the trashcan before exiting the breakroom.

39. Immediately thereafter, Plaintiff went to Mr. Dunham's office to complain.

40. Plaintiff again complained that his accommodation was not being honored, and that he was being subject to harassing comments and mistreatment by his coworkers. Plaintiff requested that he be permitted to leave work for the day and contact his vocational rehabilitation counselor regarding his work environment.

41. The following day, on or around January 13, 2021, Plaintiff called off work by leaving his supervisor a voicemail stating that he needed to take a personal day. Plaintiff's supervisor sent him a text message thanking him for the notification and acknowledging receipt.

42. Plaintiff returned to work as scheduled on January 14, 2021. When he arrived, Mr. Dunham provided Plaintiff with two corrective actions.

43. Defendant cited Plaintiff for throwing his food at another employee (written warning), and for leaving work early without completing proper documentation (verbal warning).

44. Mr. Dunham then informed Plaintiff that Defendant believed Plaintiff abandoned his job, and that they will assume he is resigning.

45. Plaintiff stated that he was not resigning, and that he wanted to continue working. Despite Plaintiff's desire to continue his employment with Defendant, Mr. Dunham insisted that Plaintiff leave the jobsite and not return to work.

46. Thereafter, Plaintiff contacted Defendant on numerous occasions in an attempt to return to work. His communications were not returned.

47. On February 1, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant.

48. Plaintiff received his Notice of Right-to-Sue from the EEOC on or around February 17, 2021.

49. Plaintiff exhausted his administrative remedies before filing the instant lawsuit.

## COUNT I
## ADA – Disability Discrimination

50. All of the preceding paragraphs are realleged as if fully rewritten herein.

51. At all times relevant herein, Plaintiff was disabled within the meaning of 42 U.S.C. § 12102.

52. Plaintiff was an otherwise qualified individual with a disability within the meaning of 42 U.S.C. § 12102.

53. Defendant knew or had reason to know that Plaintiff suffered from a disability, regarded him as disabled, and/or was aware of Plaintiff's record of disability.

54. Defendant terminated Plaintiff's employment on the basis of his disability, perceived disability, and/or record of disability.

55. Defendant discriminated against Plaintiff because of his disability by failing to accommodate Plaintiff; failing to engage in an interactive process; terminating Plaintiff's employment; and/or otherwise discriminating against him in the terms, privileges, and conditions of her employment.

56. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

57. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
### R.C. § 4112 – Disability Discrimination

58. All of the preceding paragraphs are realleged as if fully rewritten herein.

59. At all times relevant herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A) of the Ohio Revised Code.

60. At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01.

61. Defendant knew or had reason to know that Plaintiff suffered from a disability, regarded him as disabled, and/or had a record of disability.

7

62. Defendants discriminated against Plaintiff because of his disability by failing to accommodate Plaintiff; failing to engage in an interactive process; terminating Plaintiff's employment; and/or otherwise discriminating against him in the terms, privileges, and conditions of his employment.

63. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

64. Defendants' conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT III
### ADA – Failure to Accommodate

65. All of the preceding paragraphs are realleged as if fully rewritten herein.

66. At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. §12102.

67. Defendants knew or had reason to know that Plaintiff suffered from a disability.

68. Plaintiff requested a reasonable accommodation in the form of a modification to the paperwork requirement of his job duties as an electrician.

69. Such a reasonable accommodation was possible for Defendant to provide and would not have caused Defendant undue hardship.

70. Defendants violated 42 U.S.C. §12102 by failing to accommodate Plaintiff's disability, failing to engage in an interactive process, terminating Plaintiff's employment, and/or otherwise discriminating against him in the terms, privileges, and conditions of employment.

71. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

72. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT IV
### R.C. § 4112 - Failure to Accommodate

73. All of the preceding paragraphs are realleged as if fully rewritten herein.

74. At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01.

75. Defendants knew or had reason to know that Plaintiff suffered from a disability.

76. Plaintiff requested a reasonable accommodation in the form of a modification to the paperwork requirement of his job duties as an electrician.

77. Such reasonable accommodations were possible for Defendant to provide and would not have caused Defendant undue hardship.

78. Defendant violated R.C. § 4112.02 by failing to accommodate Plaintiff's disability, failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability, terminating his employment on the basis of his disability, and/or otherwise discriminating against him in the terms, privileges, and conditions of employment.

79. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious

emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

80. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT V
### ADA - Retaliation

81. All of the preceding paragraphs are realleged as if fully rewritten herein.

82. Plaintiff engaged in a protected activity when he requested a reasonable accommodation for his disability.

83. Defendant was aware that Plaintiff engaged in a protected activity.

84. Defendant intentionally retaliated against Plaintiff for engaging in the abovementioned protected activity by failing to accommodate Plaintiff; terminating Plaintiff's employment; and/or otherwise discriminating against Plaintiff in the terms, privileges, and conditions of his employment.

85. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

86. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT VI
## R.C. § 4112 - Retaliation

87. All of the preceding paragraphs are realleged as if fully rewritten herein.

88. Plaintiff engaged in a protected activity when he requested a reasonable accommodation for his disability.

89. Defendant was aware that Plaintiff engaged in a protected activity.

90. Defendant intentionally retaliated against Plaintiff for engaging in the abovementioned protected activity by failing to accommodate Plaintiff; terminating Plaintiff's employment; and/or otherwise discriminating against Plaintiff in the terms, privileges, and conditions of his employment.

91. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

92. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, front pay, statutory liquidated damages, compensatory damages, expert witness fees, attorneys' fees and expenses, and punitive damages in an amount to be determined at trial, and all other relief which the Court deems just and appropriate.

Respectfully submitted,

*/s/ Carrie J. Dyer*

Carrie J. Dyer (0090539)
*Carrie@MansellLawLLC.com*
Greg R. Mansell (0085197)
*Greg@MansellLawLLC.com*
Rhiannon M. Herbert (0098737)
*Rhiannon@MansellLawLLC.com*
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (614) 547-3614

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

*/s/Carrie J. Dyer*
Carrie J. Dyer (0090539)